Tracy **WOLFE**, Appellant

v.

William **WOLFE**, Appellee.

No. 2012–CA–000578–ME.

Court of Appeals of Kentucky.

Feb. 15, 2013.

Elizabeth M. Isaacs, Barbourville, KY, for appellant.

Douglas G. Benge, London, KY, for appellee.

Before ACREE, Chief Judge; COMBS and STUMBO, Judges.

## OPINION

STUMBO, Judge:

Tracy Wolfe appeals from the denial of a domestic violence order which she sought on behalf of her child. Her claims on appeal are that the Kentucky Rules of Civil Procedure do not apply in domestic violence proceedings and that she was denied the opportunity to offer certain proof during the domestic violence hearing. We find no error and affirm.

On October 28, 2011, Ms. Wolfe filed a petition for an emergency protective order (EPO) on behalf of her daughter. The EPO was issued and Mr. Wolfe was ordered to appear for a hearing on November 7, 2011. On that date, the hearing was continued for lack of service on Mr. Wolfe. A new hearing was set for November 21. On that date, both parties appeared, along with an agent for the Cabinet for Health and Family Services (hereinafter referred to as the Cabinet). This agent said the investigation into the allegations against Mr. Wolfe had not been completed. The court continued the case until December 5 in order for the Cabinet to complete its investigation. The hearing was continued three more times due to the Cabinet's incomplete investigation. A hearing was finally held on February 23, 2012.

On February 23, both parties appeared in court with counsel. At this time, Ms. Wolfe moved for a continuance in order to obtain certified medical records from the University of Kentucky Healthcare. Ms. Wolfe, through counsel, had previously filed a notice of intent to introduce these records, but the University had refused to honor a subpoena. The University would not produce certified records without a court order. Mr. Wolfe's counsel objected to the continuance and argued that Ms. Wolfe had not obtained the certified medical records in accordance with the rules of civil procedure; i.e., that she had sought to subpoena the records without notice to Mr. Wolfe and that the certified records were not available to Mr. Wolfe to review prior to the hearing. The motion to continue was denied and the hearing began. At the close of evidence, the court dismissed the petition and this appeal followed. Further facts will be discussed as they become relevant to our analysis.

■ Ms. Wolfe's first argument is that the denial of a continuance to obtain medical records on the grounds she had not complied with the rules of discovery was in error. Ms. Wolfe claims that domestic violence proceedings are summary statutory proceedings to which the ordinary rules of discovery do not apply. She argues that domestic violence proceedings are designed to be quick, expeditious proceedings with a specific timeline prescribed by statute.[1] Because of this expedited process, she claims there would not be enough time to adhere to the rules of civil procedure.

■ The rules of civil procedure "govern procedure and practice in all actions of a civil nature in the Court of Justice except for special statutory proceedings, in which the procedural requirements of the statute shall prevail over any inconsistent procedures set forth in the Rules." CR 1(2).

> Essentially, this makes the Civil Rules applicable to *all* civil actions … while also recognizing that those rules may not be the best approach to some types of cases, namely, "special statutory proceedings." Under CR 1, the Civil Rules still apply to such proceedings, but any procedures that the General Assembly prescribes control where they conflict with the Civil Rules.

*C.C. v. Cabinet for Health and Family Services*, 330 S.W.3d 83, 86 (Ky.2011) (emphasis in original).

In *C.C. v. Cabinet for Health and Family Services, supra*, the Kentucky Supreme Court determined that the civil rules applied to juvenile dependency, neglect, and abuse actions (DNA actions). The Court stated:

Admittedly, there may be some difficulty with applying the discovery provisions of the Civil Rules to DNA actions because of the short time frame within which such actions must be prosecuted. The normal progression of such an action is an ex parte emergency custody order or a dependency, neglect, or abuse petition, followed by a temporary removal hearing, then an adjudication hearing, and then a disposition hearing. The temporary removal hearing must occur within 72 hours of the emergency order or ten days of the petition, whichever is sooner. KRS 620.080. The adjudication hearing must occur within 45 days of the child's removal from the parents, unless the trial court extends that deadline. KRS 620.090(5). The final disposition must then occur within 45 days of the adjudication, again unless the court extends the deadline. *Id.* Unless the judge extends a deadline, which may be done only "after making written findings establishing the need for the extension and after finding that the extension is in the child's best interest," *id.*, the adjudication hearing will be completed within 55 days and the entire DNA action will be completed within 100 days.

Discovery under the Civil Rules can take much longer than either of these time frames. For example, a party served with interrogatories or requests for production of documents has 30 days to respond. CR 33.01(2); 34.02(2). Interrogatories or requests served as little as 15 days after the removal of a child could result in the responses not being due until the day the adjudication begins.

These short time frames, however, do not present a conflict between the statu-

---

1. KRS 403.740(4) states that a full hearing shall be set not more than 14 days after the issuance of an EPO.

tory requirements of DNA actions and the Civil Rules. Neither the Civil Rules nor the DNA statutes are rigid or blunt instruments. Both include provisions allowing for flexibility as to time frames—a safety valve, of sorts—which should alleviate much, if not all, of the perceived conflict between them.

For example, protective orders are available to combat abusive discovery requests. CR 26.03. And generally speaking, the trial court has the power to control the timing and sequence of discovery. CR 26.04. In most instances, where a time frame for responding to discovery may be too short, the court specifically has the flexibility to lengthen the time frame. *E.g.*, CR 33.01(2) ("The court may allow a shorter or longer time."); CR 34.02(2) ("The court may allow a shorter or longer time.") CR 36.01 (allowing 30 days to respond to a request for admission or "within such shorter or longer time as the court may allow"). Of course, the responsibility for requesting and justifying a shorter time falls on the party seeking the discovery, and whether to allow the shorter time falls within the sound discretion of the trial court. Conversely, the responsibility for requesting a protective order or an order limiting discovery, say, under CR 26.04, falls on the party seeking the limit, and again, whether to allow such a limit lies in the sound discretion of the trial court. Similarly, the time limits in DNA actions can be expanded, though this is a more difficult proposition, requiring specific findings by the trial court. *See* KRS 620.090(5). Thus, there is no direct conflict between the statutes and rules.

*C.C. v. Cabinet for Health and Family Services* at 87–88.

As in the DNA case described above, the civil rules also apply to domestic violence proceedings. The domestic violence statutes may require a hearing within a short amount of time, but just as with DNA actions, domestic violence actions can be continued. The case *sub judice* was continued a number of times. The case was originally scheduled to be heard on November 7, 2011, but was not actually heard until February 23, 2012. Continuances and the other methods mentioned in *C.C. v. Cabinet for Health and Family Services, supra,* would alleviate any apparent conflict between the civil rules and the statute. The time limits in domestic violence actions do not conflict with the rules of civil procedure.

Ms. Wolfe's other argument on appeal stems from the direct examination of Tracy Miller, an employee of the Children's Advocacy Center who had interviewed Ms. Wolfe's children. Counsel for Ms. Wolfe asked Ms. Miller if she had also interviewed Ms. Wolfe's stepdaughter. Counsel for Mr. Wolfe objected, arguing that there were no allegations regarding Mr. Wolfe's relationship with the stepdaughter. The trial court sustained the objection. Ms. Wolfe claims excluding this testimony was in error; however, we find this issue is not preserved for our review because there was no avowal testimony, and thus we have no way to determine the relevancy of the proposed evidence. *Commonwealth v. Ferrell*, 17 S.W.3d 520, 523 (Ky.2000).

For the foregoing reasons, the decision of the Laurel Circuit Court is affirmed.

ALL CONCUR.