NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

KATHERINE RYAN, *Petitioner/Appellant*,

*v.*

JOHN RUBALCABA, *Respondent/Appellee*.

No. 1 CA-CV 21-0078 FC
FILED 4-7-2022

Appeal from the Superior Court in Maricopa County
No. FC2018-096340
No. FC2018-096422
The Honorable Joshua D. Rogers, Judge

**AFFIRMED IN PART;
VACATED AND REMANDED IN PART**

COUNSEL

Pangerl Law Firm PLLC, Phoenix
By Regina M. Pangerl
*Counsel for Petitioner/Appellant*

Gillespie Shields Goldfarb & Taylor, Phoenix
By Mark A. Shields, David Goldfarb
*Counsel for Respondent/Appellee*

_____

**MEMORANDUM DECISION**

Vice Chief Judge David B. Gass delivered the decision of the court, in which Presiding Judge Paul J. McMurdie and Judge Angela K. Paton joined.

_____

**G A S S**, Vice Chief Judge:

¶1        Mother challenges the superior court's joint legal decision-making and child support orders. We affirm the superior court's legal decision-making order because reasonable evidence supported it. But we vacate and remand the child support orders because the applicable child support guidelines were misapplied.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Mother and father are the unmarried parents of a child (R.R.) born in 2018. Both parents filed petitions to establish paternity, legal decision-making, parenting time, and child support. The parents did not dispute paternity. The superior court consolidated the matters and awarded mother temporary sole legal decision-making authority but did not award temporary support.

¶3        After trial, the superior court ordered joint legal decision-making. The superior court also ordered father to pay $49 per month in ongoing child support and awarded mother $1,078 in retroactive support. The superior court did not award attorney fees. Mother timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1 and 12-2101.A.1.

## ANALYSIS

### I.    Joint Legal Decision-Making

¶4        Mother first argues the superior court abused its discretion in evaluating several best-interests factors. At trial, the parties contested legal decision-making, and the superior court made written findings on each factor in A.R.S. §§ 25-403 and -403.01.

¶5        This court reviews legal decision-making orders for abuse of discretion. *Christopher K. v. Markaa S.*, 233 Ariz. 297, 300, ¶ 15 (App. 2013). A court abuses its discretion when it rules without competent evidence or

commits a legal error in making a discretionary decision. *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018). In determining legal decision-making, the superior court must consider all relevant factors bearing on the child's best interests, including the factors enumerated in § 25-403.A. The superior court also must consider the additional factors specified in § 25-403.01.B to determine the level of legal decision-making. In a contested custody matter, the superior court "shall make specific findings on the record about all relevant factors." A.R.S. § 25-403.B.

¶6        Regarding "[t]he past, present and potential future relationship between the parent and the child," the superior court found both parents loved the child and enjoyed a close relationship with the child. *See* A.R.S. § 25-403.A.1. The superior court also warned the parents their continued animosity could harm their future relationships with their child. Mother contests the superior court's evaluation of the co-parenting dynamic and argues her feelings toward father are warranted. But this court does not reweigh credibility determinations, such as whether one parent harbored "animosity" toward another parent. *See Richard M. v. Patrick M.*, 248 Ariz. 492, 498, ¶ 23 (App. 2020).

¶7        Mother next argues the superior court did not fully consider all the evidence from Dr. Delatorre or the Department of Child Safety (DCS) in weighing father's mental health. *See* A.R.S. § 25-403.A.5. Dr. Delatorre concluded father is attentive and loving towards his children, can identify threats to the child, and places the child's needs above his own. The court-appointed advisor (CAA) also issued a report regarding her investigation—including her interviews with the parents and her review of the DCS investigations, mother's orders of protection (OOP), and the police reports. The CAA's report acknowledged father's conflict with other mothers, but noted he has joint legal decision-making authority and equal parenting time with both his other children. Ultimately, the CAA recommended father have unsupervised parenting time. The superior court considered father's psychological evaluation and agreed with the report's conclusion finding father "is able to parent." Mother asks us to reweigh this evidence, which this court does not do. *See Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

¶8        Mother claims the superior court erred in concluding, under § 25-403.A.6, she withheld the child and father had to call the police. The superior court found credible father's claims of mother's parental interference. This court does not reweigh such evidence on appeal. *Hurd*, 223 Ariz. at 52, ¶ 16.

¶9        Finally, mother objects to the superior court's characterization of her alleging father "abused" R.R. Instead, mother characterizes her report to DCS as "safety concerns"—not abuse allegations—arising after R.R.'s arm sustained a second-degree burn from a birthday candle. The superior court did not err in using the term abuse when considering whether father either burned R.R. or carelessly allowed the child to be burnt. The superior court ultimately concluded—and mother apparently agrees—the evidence did not support a finding of child abuse. Because the superior court made the requisite findings under each factor, and the evidence supported those findings, the superior court did not abuse its discretion. *See In re Estate of Pouser*, 193 Ariz. 574, 579, ¶ 13 (1999) (this court examines "the record only to determine whether substantial evidence exists to support" the superior court's action).

## II.        Domestic Violence Against Mother

¶10        Mother also argues the superior court erred in finding father did not commit significant domestic violence against her. *See* A.R.S. § 25-403.03.A (significant domestic violence or a significant history of domestic violence precludes the abusing parent from having joint legal decision-making authority). Mother alternatively asserts father failed to rebut the presumption against joint legal decision-making in § 25-403.03.C–E for parents found to have committed domestic violence.

¶11        Under § 25-403.03.A, when one parent has engaged in significant domestic violence or has a significant history of domestic violence, the superior court shall not award joint legal-decision making. When subsection A does not apply but one parent has committed an act of domestic violence against another parent, § 25-403.03.D creates "a rebuttable presumption that an award of sole or joint legal decision-making to the [offending] parent . . . is contrary to the child's best interests." "Before awarding sole or joint legal decision-making authority to the offending parent, the [superior] court must make specific findings on the record" regarding whether sufficient evidence rebuts the presumption and must consider the § 25-403.03.E factors. *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 12 (App. 2019).

### A.        The Orders of Protection

¶12        Once alleged, the superior court must first determine if a parent committed domestic violence. *See* A.R.S. § 25-403.03.C. Here, the superior court found father did.

¶13       At the 2018 hearing on her OOP, mother alleged father twice held her in a room against her will, stalked her via a phone app and her dating profile, and attempted to force sexual intercourse on her. Father testified that when mother was attempting to break up with him, he was making his case for fixing the relationship and keeping the family together. He admitted he tried to "hold her" the night she rebuffed him and then followed her from room to room. The commissioner heard the actual events as they unfolded because mother introduced a three-hour audio recording of the evening.

¶14       The commissioner upheld the 2018 OOP based on father's admission he followed mother from room to room during the arguments. The commissioner expressed concern over the use of a phone app to track mother's movements. And, though the commissioner did not find mother established attempted rape, the commissioner did tell father he had "significant boundary issues" and he needed to address them in therapy.

¶15       Mother sought to renew the OOP in 2019. She first alleged father tampered with her refrigerator while she was on vacation and ruined her stored breastmilk. Second, she alleged father harassed her by filing 16 police reports about custodial interference. The superior court dismissed the 2019 OOP, stating though the parties were in a high-conflict dispute and father's acts may have been excessive, mother did not meet her burden of proving harassment.

¶16       Other than objecting to our review of the OOP transcripts, mother does not challenge the superior court's evidentiary findings under § 25-403.03.C. Mother argues our review should be limited to the OOP itself, not the hearing transcripts. But the transcripts of both hearings are in the record, the parents agreed to introduce the transcripts, and most of the above facts also came into evidence through the CAA's testimony. Further, this court may take judicial notice of the superior court's transcripts. *See* Ariz. R. Evid. 201(b)(2) (a court may take judicial notice of indisputable facts if they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *State v. Rhome*, 235 Ariz. 459, 461, ¶ 7 (App. 2014) (this court may take judicial notice of its own records).

## B.       "Significant" Domestic Violence

¶17       The superior court must next consider whether the domestic violence was "significant" under § 13-3601 or if a preponderance of the evidence established "a significant history of domestic violence." A.R.S. § 25-403.03.A. A finding under one or the other precludes an award of sole

or joint legal decision-making authority to the abusing parent. *Id.* After consideration, the superior court found neither significant domestic violence nor a significant history of domestic violence. Mother challenges those determinations.

**¶18**         To begin, the superior court did not fail to recognize "a significant history of domestic violence" precludes joint legal decision-making. The superior court's order explicitly recognized § 25-403.03.A contemplates *either* significant domestic violence *or* a significant history of such. Ultimately, it found father's "acts in the spectrum of domestic violence do not constitute significant as contemplated by the statute." The superior court's reference to significance covers both § 25-403.03.A grounds.

**¶19**         In doing so, the superior court considered the following factors to test the significance of the domestic violence: (1) the seriousness of the incident of domestic violence, (2) the frequency or pervasiveness of the domestic violence, (3) and the passage of time and its impact. *See DeLuna*, 247 Ariz. at 424, ¶ 15 n.6. The superior court has the "discretion to weigh the evidence and determine the degree of the domestic violence's 'significance'" under § 25-403.03.A. *See id.* at ¶ 15. The superior court condemned father's actions, but concluded the acts were not significant and did not constitute a significant history of domestic violence when considered "in the spectrum of domestic violence."

**¶20**         The evidence in the record shows the events in question all occurred over approximately four weeks—shortly before and then after their child was born. Based on the superior court's findings, the events did not involve physical violence or threats and did not last for a lengthy time. In 2018, the commissioner did not find the attempted rape allegation proven. In 2019, the superior court deemed mother's allegations of father's harassment—because he repeatedly called the police—insufficient for an order of protection. Because evidence in the record supports the superior court's finding father's domestic violence was neither significant nor evidenced a significant history, the superior court did not abuse its discretion. *Pridgeon v. Super. Ct.*, 134 Ariz. 177, 179 (1982).

### C.      Rebutting the Domestic-Violence Presumption

**¶21**         Mother contends the superior court erred in finding father rebutted the presumption against joint legal decision-making authority. The superior court made written findings as to each of the six § 25-403.03.E factors. The superior court went on to find no other domestic-violence

incidents had occurred and if it awarded either mother or father sole decision-making authority, the award would result in an abuse of that authority to the other parent's detriment. *See* A.R.S. § 25-403.03.E.1, .6. Accordingly, the superior court made written findings regarding why father overcame the presumption and considered the § 25-403.03.E factors. The order for joint legal decision-making demonstrates the superior court engaged in the necessary inquiry regarding the child's best interests, and the record contains sufficient evidence to support the superior court's findings. Mother has shown no legal or factual error sufficient to warrant reversal. *See Engstrom*, 243 Ariz. at 471, ¶ 4. The superior court did not abuse its discretion in finding father rebutted the presumption against joint legal decision-making.

### III.    Child Support

¶22        Mother argues the superior court abused its discretion in calculating prospective and retroactive child support by: (1) over-crediting father's business expenses, (2) using incorrect 2018 and 2019 incomes for mother, (3) giving father credit for paying support for his other two children, and (4) crediting father with equal parenting time for the arrearage calculation. Because we agree with mother on the third and fourth issues, we need not resolve her remaining claims.

¶23        This court reviews *de novo* the superior court's interpretation of the 2018 Arizona child support guidelines in A.R.S. § 25-320 appendix (2018 guidelines). *Sherman v. Sherman*, 241 Ariz. 110, 113, ¶ 9 (App. 2016); *see also Patterson v. Patterson*, 226 Ariz. 356, 358–59, ¶¶ 4, 7 (App. 2011). But this court reviews a child support award for an abuse of discretion and accepts the superior court's "factual findings unless clearly erroneous." *Sherman*, 241 Ariz. at 112–13, ¶ 9. Under the 2018 guidelines, § 6.D, "An amount may be deducted from the gross income of a parent for support of natural or adopted children of other relationships not covered by a court order."

¶24        The superior court's child support worksheet credited father with $1,307 in child support not ordered. That obligation tracks the 2018 guidelines support chart for a parent with father's income and two children. But father testified he has court-ordered child support obligations for his other two children. Because his other children are covered by a child support order, he cannot qualify for § 6.D deductions.

¶25        Additionally, father would not qualify for § 6.C deductions. Under the 2018 guidelines, § 6.C, "An amount shall be deducted from the

gross income of a parent for children of other relationships covered by a court order for whom they are the primary residential parent." Father testified he has an equal parenting time schedule—specifically, a 2-2-3 schedule—with each of his other children. Because father does not have physical parenting time with his other children for the greater part of the year, he is not a primary residential parent under the guidelines and § 6.C is inapplicable.

¶26 Father may be eligible for court-ordered child support deductions under § 6.B. According to father's affidavit of financial information, he pays $507 per month in court-ordered support for his other two children. Mother argues father was not paying his other child support, and, therefore, he did not qualify for a deduction under § 6.B (a parent may be credited for child support only "if [it is] actually being paid"). The parents presented conflicting and limited evidence on this issue. Because the superior court credited father with § 6.D deductions, it did not resolve whether father qualifies under § 6.B. The superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Richard*, 248 Ariz. at 498, ¶ 23 (citation omitted). Accordingly, we leave the resolution of this issue to the superior court on remand.

¶27 Though our holding discusses the 2018 guidelines, we recognize the 2022 child support guidelines will apply on remand unless the parties agree otherwise. *See* A.R.S. § 25-320 app. (2022 guidelines), § XVII.A. Under the 2022 guidelines, § II.B.2 covers deductions for other support obligations. Section II.B.2.e permits the superior court to deduct either the amount of court-ordered support or the standard support deduction—whichever is higher—for parents with equal parenting time. Though the superior court may apply § II.B.2.c deductions on remand, we note that even if the superior court were to provide father the same credits—and leaving all other variables as constant—the child support calculation would still differ slightly under the 2022 guidelines.

¶28 The superior court also credited father with equal parenting time for past-due support. In its temporary orders, the superior court awarded father 3 four-hour blocks of parenting time each week. But under the 2018 guidelines, § 11.C.4, each block of father's parenting time counted for 25% of a day. Father could not be credited with equal parenting time for retroactive support. *See Simpson v. Simpson*, 224 Ariz. 224, 226, ¶ 9 (App. 2010) (retroactive support requires the superior court to "apply the guidelines to the factual circumstances as they existed in the previous

months for which the court is ordering child support"). For purposes of remand, this calculation is the same under the 2022 guidelines. *See* § V.C.2.c.

**¶29**     Because the superior abused its discretion in calculating prospective and retroactive child support, we vacate both support orders.

## ATTORNEY FEES ON APPEAL

**¶30**     Both mother and father request attorney fees on appeal. Mother cites both §§ 25-809 and -324 as the bases for a fee award. Father cites only § 25-324. This court may award attorney fees after considering the financial resources and reasonableness of the parties' legal positions. A.R.S. §§ 25-324.A, -809.G. After considering those factors, we decline to award attorney fees on appeal. Because mother obtained partial success on appeal, we award mother her costs on appeal upon compliance with ARCAP 21. *See Henry v. Cook*, 189 Ariz. 42, 44 (App. 1996) (under § 12-341, "the party who obtains partial success is entitled to recover" costs).

## CONCLUSION

**¶31**     We affirm the superior court's legal decision-making order but vacate and remand the child support orders.



AMY M. WOOD • Clerk of the Court
FILED:     AA